**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**April 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
_____

MICHAEL E. NUTTER,

    Plaintiff - Appellant,

v.

RON WARD; DEBBIE MORTON;
BOBBY BOONE; JIM RABON;
KRISTIN TIMS; MELANIE
BRENTON; CONNIE KAYS; JESSIE
SUTTER, JR.; SHARON HARRISON,

    Defendants - Appellees.

No. 05-5205
(N. D. Oklahoma)
(D.Ct. No. 05-CV-517-TCK-SAJ)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.
_____

    After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

_____

    [*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

Michael E. Nutter, an Oklahoma state prisoner, appeals *pro se*[1] and *in forma pauperis* from the district court's dismissal of his 42 U.S.C. § 1983 complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background[2]

Nutter was charged in Oklahoma state court with *inter alia* Driving Under the Influence of Alcohol (DUI) and Escape from Legal Custody. Nutter was convicted of the DUI count and sentenced to five years imprisonment. All other charges, including the Escape from Lawful Custody charge, were dismissed pursuant to a plea agreement.

Thereafter, on March 9, 2004, Nutter was transported to the Lexington Assessment Center where he was classified as minimum security and received a security point of 1. On March 22, 2004, Nutter was transferred to the Northeastern Oklahoma Correctional Center (NEOCC) for housing. There, he

---

[1] We construe *pro se* pleadings liberally. *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1187 (10th Cir. 2003).

[2] On appeal, Nutter has filed a packet of exhibits which includes his various grievances to prison staff and the responses thereto. Although these exhibits would be helpful to clarify Nutter's pleadings, they were not introduced in the district court. Consequently, we cannot review them and are limited to the record below, in particular, the amended complaint. *See Aero-Medical, Inc. v. United States*, 23 F.3d 328, 329 n.2 (10th Cir. 1994); *Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992).

was again classified as minimum security with a security point of 1. He was also recommended for promotion to Class Level 3 in July 2004, which would entitle him to earn forty-five days of earned credit per month. *See* OKLA. STAT. tit. 57, § 138(D)(2)(c).[3] Additionally, he was determined to be eligible for community corrections confinement in August 2004.

In July 2004, Nutter was apparently promoted to Class Level 3.[4] In August 2004, Nutter filed a petition for community confinement. On August 31, 2004, the NEOCC's Unit Classification Committee recommended Nutter for community confinement based on his security points and outstanding inmate behavior. However, on September 8, 2004, Connie Kays, an NEOCC Case Manager III, audited Nutter's file and discovered his Escape from Lawful Custody charge. Consequently, Kays added six escape points to Nutter's security points. As a result of this adjustment, Nutter became ineligible for community confinement

---

[3] This statute addresses inmate eligibility for earned credits. It directs the Oklahoma Department of Corrections to develop a written policy and procedure whereby inmates are to be assigned a Class Level from 1 to 4. OKLA. STAT. tit. 57, § 138(B). After November 1, 2001, inmates who had never been convicted as an adult or youthful offender for certain felony offenses may earn the following credits per month: (1) Class Level 1--zero credits; (2) Class Level 2--twenty-two credits; (3) Class Level 3--forty-five credits; and (4) Class Level 4--sixty credits. OKLA. STAT. tit. 57, § 138(D)(2)(c). Each earned credit is equivalent to one day of incarceration. OKLA. STAT. tit. 57, § 138(A).

[4] Nutter never expressly states in his amended complaint that he was promoted to Class Level 3 in July 2004. However, he does allege that in August 31, 2004, the NEOCC's Unit Classification Committee recommended him for community confinement based on his outstanding inmate behavior on Class Level 3 status. Therefore, it appears Nutter was promoted to Class Level 3 in July 2004.

and promotion to Class Levels 3 or 4. Therefore, it appears the defendants re-classified Nutter to a lower class level. Additionally, ninety-two days of earned time credit were removed from his file, apparently because he was never entitled to them.

Between September 2004 and May 2005, using the prison's grievance procedure, Nutter attacked the use of his dismissed escape charge to render him ineligible to be promoted to Class Levels 3 or 4 and community confinement. He also challenged the removal of the ninety-two days of earned credits. He asserted the use of the dismissed charge was contrary to Oklahoma law and prison policy. He further argued he was entitled to notice and a hearing prior to the challenged actions being taken against him and the failure to provide him such notice and hearing violated his due process rights. At each level of the grievance procedure, Nutter was denied relief. Relying on prison policy OP-060103(M)(II)(B)(3),[5]

---

[5] OP-060103(M)(II)(B) governs Custody Evaluation. Subsection (3) states in part:

Consider all escapes or attempted escapes that have occurred during the stipulated time period prior to the custody assessment. . . . Necessary documentation for Escape or Attempted Escape will be a misconduct conviction, felony or misdemeanor conviction as evidenced by a judgment and sentence, Juvenile on Line Tracking System (JOLTS), rap sheet entry, as indicated in the DOC movement history on the Consolidated Record Card or the offender computer system, or any other entry on an official government document. In cases where no disposition is indicated for an escape charge on a rap sheet, the court of jurisdiction will be contacted and requested to verify in writing the disposition of the case. Every effort will be made to verify the disposition of escape charges.

-4-

prison authorities concluded no conviction was required to assess escape points.

On September 6, 2005, Nutter filed a *pro se* complaint against various Oklahoma state prison officials in the United States District Court for the Northern District of Oklahoma pursuant to 42 U.S.C. § 1983. On October 12, 2005, Nutter filed a motion to amend his complaint and a proposed amended complaint. On October 25, 2005, the district court declared Nutter's motion to amend moot based on the fact that leave of court was not necessary as the defendants had not yet been served or filed an answer. The court ordered Nutter's amended complaint to be filed, then screened it pursuant to 28 U.S.C. § 1915A and dismissed it for failure to state a claim upon which relief could be granted under 28 U.S.C. § 1915(e)(2)(B). It also issued a strike under 28 U.S.C. § 1915(g). This timely appeal followed.

## II. Discussion

In his amended complaint, Nutter alleged the defendants misinterpreted OP-060103(I)(B)(3) by ignoring its conviction requirement, thereby allowing escape points to be assessed for his dismissed escape charge merely because it was documented on an "entry on an official government document." *See supra* n.5. In doing so, Nutter argued the defendants violated his rights to equal protection and due

---

*See* http://www.doc.state.ok.us/Offtech/op060103(m).htm.

process and his right to be free from being placed in double jeopardy. Because the district court dismissed the complaint for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B), our review is *de novo*. *Perkins v. Kan. Dep't of Corrs.*, 165 F.3d 803, 806 (10th Cir. 1999) (§ 1915(e)(2)(B)(ii)).

> Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend. In determining whether dismissal is proper, we must accept the allegations of the complaint as true and we must construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff.

*Id.* (citation omitted).

A. Equal Protection

In his amended complaint, Nutter claimed the defendants arbitrarily considered some inmates' dismissed charges in the classification process while not considering other inmates' dismissed charges in that same process. He alleged he could provide evidence that other inmates, even with violent charges, were eligible for earned credits based on the fact their charges were dismissed without conviction. The district court rejected this claim based on the fact Nutter had no constitutionally protected liberty interest in being placed in any particular classification level.

"The Equal Protection Clause requires the government to treat similarly situated people alike." *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). Because he does not claim he was treated differently than other inmates because he

-6-

belongs to a suspect class, Nutter needs to show he was "similarly situated" to other inmates whose dismissed charges were not used to determine their custody classification and "the difference in treatment was not reasonably related to legitimate penological interests." *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (quotations omitted); *see Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).

Classification of inmates in Oklahoma is in part discretionary. *See* OKLA. STAT. tit. 51, § 138(D); *see also Wilson v. Jones*, 430 F.3d 1113, 1116 (10th Cir. 2005) (describing Oklahoma's statutory classification system as having both objective and subjective/discretionary components). For instance, it requires a prison official to evaluate an inmate's personal hygiene, maintenance of his living area and participation in his work, education or program assignment. OKLA. STAT. tit. 51, § 138(D)(1). The prison official must rate these items as either "outstanding," "excellent" or "good." *Id.* To receive an "outstanding" rating, the prison official must find that the inmate has "display[ed] consistently exceptional initiative, motivation, and work habits"; to receive an "excellent" rating, the official must determine the inmate displayed "above-average work habits with only minor errors and rarely perform[ed] below expectations." *Id.* at § 138(D)(4). Given the multiplicity of subjective factors involved in the classification process, "it is not plausible that 'there are no relevant differences between [Nutter] and other inmates

that reasonably might account for their different treatment.'" *Fogle*, 435 F.3d at 1261 (quoting *Templeman*, 16 F.3d at 371). Moreover, Nutter does not allege that these other inmates' dismissed charges were for escape or attempted escape. Therefore, not only are these inmates not "similarly situated" to him, but any difference in treatment is reasonably related to the legitimate penological interest of preventing inmate escapes. The district court properly dismissed Nutter's equal protection claim.

B. Double Jeopardy

Nutter asserted the defendants, by using his dismissed escape charge, essentially retried him on that charge, found him guilty and punished him for it in the form of the removal of earned time credits and the inability to be promoted to Class Levels 3 or 4. The district court concluded Nutter's placement in a particular classification level does not implicate double jeopardy.

The Double Jeopardy Clause of the Fifth Amendment protects against "(1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *Warnick v. Booher*, 425 F.3d 842, 847 (10th Cir. 2005) (quotations omitted). Because Nutter was never prosecuted for the escape charge in state court, jeopardy never attached. *See United States v. Bizzell*, 921 F.2d 263, 266 (10th Cir. 1990) ("Jeopardy attaches only in a criminal proceeding, when the jury is impaneled

and sworn, or in a bench trial when the court begins to hear evidence.") (internal citation omitted). Moreover, the prison's use of the dismissed escape charge to classify Nutter for purposes of custody is neither punishment nor part of a criminal prosecution. *Cf. United States v. Rohde*, 159 F.3d 1298, 1300 (10th Cir. 1998) ("For double jeopardy purposes, the consideration of related but uncharged criminal conduct in calculating a sentence . . . [does] not constitute 'punishment.'"); *Lucero v. Gunter*, 17 F.3d 1347, 1351 (10th Cir. 1994) ("Prison disciplinary hearings are not part of a criminal prosecution and therefore do not implicate double jeopardy concerns.") (internal citation omitted). The district court properly dismissed Nutter's double jeopardy claim.

C. Due Process

In his amended complaint, Nutter alleged the defendants denied him due process by failing to afford him notice or a hearing prior to removing the ninety-two earned time credits. The district court dismissed this claim without prejudice. It concluded entry of judgment on this claim would necessarily imply the invalidity of the administration of his sentence by defendants in violation of *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997). Because Nutter had not demonstrated that the administration of his sentence had been invalidated by the state court or a federal habeas court, the district court concluded his due process claim had not yet accrued against the defendants.

In *Heck*, the Supreme Court held that when a prisoner seeks damages under § 1983, a district court must determine whether a judgment in favor of the prisoner would "necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. If so, his claim is not cognizable under § 1983 and "the complaint must be dismissed unless the [prisoner] can demonstrate that the conviction or sentence has already been invalidated." *Id.* In *Edwards*, the Supreme Court extended *Heck* to a prisoner's claim for damages challenging the validity of the procedures used to deprive him of good-time credits. There, Balisok, a state inmate, brought suit under § 1983 claiming the procedures used in his disciplinary proceeding violated his Fourteenth Amendment due process rights, in particular, his right to put on a defense and to a fair and impartial hearing officer. 520 U.S. at 643, 646-47. Although his disciplinary proceeding resulted in the loss of good time credits, Balisok's complaint did not seek restoration of those credits but rather compensatory and punitive damages, declaratory relief and an injunction to prevent future violations. *Id.* at 643-44. Nevertheless, the Court concluded his claims for declaratory relief and money damages were not cognizable under § 1983 because, if established, they would "necessarily imply the invalidity of the deprivation of his good-time credits." *Id.* at 646.

Although *Edwards* involved disciplinary proceedings, it is dispositive. In his amended complaint, Nutter does not seek restoration of his earned time credits.

-10-

Indeed, he could not do so in a § 1983 complaint. *Id.* at 643-44 ("[T]he sole remedy in federal court for a prisoner seeking restoration of good-time credits is a writ of habeas corpus.") (citing *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973)). Rather, he seeks damages, an injunction against prison officials' use of unconstitutional procedures and a declaration that the defendants violated Nutter's plea agreement with the Tulsa County District Court judge. However, his claim is that prison officials denied him a hearing and notice prior to removing ninety-two days of his earned time credits. In order to decide this claim, a court would have to determine whether the removal of credits was proper, *i.e.*, whether the defendants misinterpreted prison policy. Indeed, if the defendants properly interpreted prison policy, Nutter was never entitled to the credits and procedural due process is not implicated. *See Stephens v. Thomas*, 19 F.3d 498, 501 (10th Cir. 1994) (holding that revocation of erroneously awarded good time credits did not implicate due process). Thus, to grant Nutter relief on his procedural due process claim would "necessarily imply the invalidity of the deprivation of his [earned time] credits." *Edwards*, 520 U.S. at 646. Because Nutter has not shown that the defendants' decision to remove his earned time credits has been invalidated, his claim is not cognizable under § 1983.

To the extent Nutter's amended complaint can be read to assert that the defendants denied him due process by failing to afford him notice or a hearing prior

to re-classifying him to where he is ineligible to be promoted to Class Levels 3 and 4 and to be placed in community confinement, the reasoning of *Heck* and *Edwards* also applies. Whether Nutter was entitled to procedural due process depends on whether the defendants misinterpreted prison policy, an issue Nutter has not asked us to resolve and is more appropriately raised in a habeas corpus proceeding.

### III. Conclusion

We AFFIRM the district court's decision.

We DENY Nutter's Emergency Motions for Temporary Restraining Order and/or Preliminary Injunction as they attempt to assert claims not raised in the district court.

Nutter is reminded to continue making partial payments of his appellate filing fee until the entire balance is paid.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge